**FIRST NATIONAL BANCSHARES CORPORATION II, a corporation, Petitioner,**

v.

**The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

No. 85–3702.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 15, 1986.
Decided Oct. 28, 1986.

Martin H. Aussenberg, Stanley M. Huggins, argued, P. Thomas Parrish, Borod & Huggins, Memphis, Tenn., for petitioner.

Richard M. Ashton, Washington, D.C., Kevin Handly, Legal Div., Federal Reserve Bd., Washington, D.C., Richard M. Ashton, Conrad Bahlke, Jennifer Johnson, James E. Scott, argued, for respondent.

Before MILBURN and BOGGS, Circuit Judges, and HARVEY *, Senior District Judge.

PER CURIAM.

The Board of Governors of the Federal Reserve System (Board) denied petitioner's application to become a second-tier "one bank" bank holding company. The petitioner now appeals the Board's decision.

First National Bancshares Corporation (Company) is a Tennessee corporation that is registered as a bank holding company under the Bank Holding Company Act of 1956 (BHC Act) as amended, 12 U.S.C. § 1841 *et seq.* (1978). It owns 100% of the outstanding stock of the First National Bank in Lexington, Tennessee (Bank).

When Company was formed to acquire Bank in 1979, petitioner's principal, Ernest Vickers III (Vickers) was Chairman of the

---

* Honorable James Harvey, United States Senior District Judge of the Eastern District of Michigan, sitting by designation.

Board of both Company and Bank, Executive Vice President of Company, and the largest single shareholder of Company with 40% of the outstanding shares. 20% of the shares were held by Vickers's brother, Douglas, and his other two siblings were each beneficiaries of the 20% shares of stock held in trust.

Company incurred $3.5 million in debt in the form of a bank loan in connection with its formation and acquisition of Bank. Following this, substantial hostilities occurred within the Vickers family. The end result of these hostilities was that Vickers gained 100% control of Company in April 1983. Shortly thereafter, Company began issuing short-term, small denomination debt certificates to the public to reduce its bank acquisition debt.

Vickers incurred substantial personal debt to gain 100% control of Company. For tax reasons, he wished to form petitioner as a second-tier holding company over Company and Bank. Such a transaction requires approval of the Board of Governors of the Federal Reserve System. Although such applications can be issued at the Reserve Bank level, applications can be, and this one was, removed to the full Board level for action on June 21, 1985.

In petitioner's application, Vickers proposed to transfer 95% of his Company stock and $525,000.00 of his personal acquisition-related debt to petitioner for 100% of its stock. This application also noted that Company, in addition to its remaining acquisition debt, was $2,465,265 in debt to public investors holding the above-mentioned short-term investment certificates, sold by it at fluctuating rates of interest. These instruments reached maturity in time periods varying from seven days to six months.

The Federal Reserve Bank of St. Louis accepted petitioner's application on June 7, 1985. At that time, the Reserve Bank forwarded to the Board a letter dated June 6, 1985 from the Office of the Comptroller of the Currency (OCC), Bank's primary supervisor. The OCC recommended action on petitioner's application be deferred until questions regarding excessive insider loans were resolved. Bank responded in a letter dated June 13, 1985, enclosing a series of exhibits supporting its view that OCC concerns were misplaced or had already been addressed.

On June 21, 1985 the Reserve Bank notified Bank that the application would be transferred to the Board for consideration. On that date, the OCC sent the Reserve Bank a copy of its letter responding to Bank's letter of June 13. This letter expressed further concern with insider loans to companies owned by Vickers, and urged Bank to obtain outside directors.

In a letter dated July 16, 1985, petitioner responded to some Board concerns. Petitioner argued: 1) that the investment certificates issued by Company did not preclude consideration of its capital adequacy on a bank-only basis under the Board's Capital Adequacy Guidelines because the Guidelines' definition of debt held by the general public was "overly broad"; 2) that it was eligible for more lenient criteria under the Policy Statement because the purchase by Vickers of his siblings' Company shares was a "functional" change in control of bank; and 3) that petitioner had the capability to reduce its ratio of debt to equity to below 30% by 1991.

On August 5, 1985, the Board denied petitioner's application due to numerous concerns about its proposed capitalization and level of indebtedness. Those concerns caused the Board to believe petitioner would not live up to the Board's basic premise that "a bank holding company should be a source of financial and managerial strength to its subsidiaries." Petitioner now appeals this denial.

When a company applies to become a bank holding company, the Board must consider the financial and managerial resources and future prospects of the company and bank concerned. 12 U.S.C. § 1842(c). The findings of the Board as to facts, if supported by substantial evidence, shall be conclusive. 12 U.S.C. § 1848. Substantial evidence is such evidence as a reasonable mind might accept as adequate

to support a conclusion. *Board of Governors v. First Lincolnwood Corporation,* 439 U.S. 234, 253, 99 S.Ct. 505, 515, 58 L.Ed.2d 484 (1978); *Southern Moldings, Inc. v. N.L.R.B.,* 715 F.2d 1069 (6th Cir. 1983).

■■■ Conclusions of the Board reached from its findings of fact are given very substantial deference. Decisions of the Board should be upheld on review provided "substantial evidence" exists to support them. *First Lincolnwood Corp.,* 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484. Board decisions should not be reversed even if a different result might have been reached by the Court of Appeals if it were making the initial decision in the matter. *Wyoming Bancorporation v. Board of Governors of Federal Reserve System,* 729 F.2d 687 (10th Cir.1984). It is the petitioner's burden to prove that the Board's decision was not supported by substantial evidence.

■■■ The first issue presented for review is whether the Board's conclusion that the petitioner did not meet capital adequacy guidelines is based upon an overly broad definition of "debt held by general public." The Board defines such debt as "debt held by parties other than institutions, officers, directors, and principal shareholders of banking organizations or their related interests." 50 Fed.Reg. 16066 n. 1. Due to petitioner's heavy public debt, the Board was required to look at its capitalization on a consolidated basis, *i.e.,* look upon the capitalization of the petitioner and its subsidiaries as a single unit. As such, petitioner's capital did not meet the minimum levels specified in the applicable Capital Guidelines. *See* 12 C.F.R. § 225, Appendix A (1985); 12 C.F.R. § 225, Appendix B (1980); 50 Fed.Reg. 16057 (April 24, 1985).

Courts should defer to an agency's construction of its own statutory mandate, particularly when in accordance with well-established statutory goals. *First Lincolnwood Corp.,* 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484. The issue presented here concerns not so much the construction of the regulation as the reasonableness of the regulation itself. Given the narrow scope of judicial review of an agency's statutes and regulations, and given the consistency of this definition with the Board's regulatory scheme, the Court will not strike down the Board's definition of "debt held by the general public."

■■■ The next issue presented for review is whether the Board's conclusion that Vickers had control of Bank before obtaining ownership of his siblings' 60% share of stock is based upon substantial evidence. This is relevant to the Board's final decision because the Board's policy statement sets forth its desire to facilitate the transfer of local ownership of small community banks through the device of one-bank holding companies, and thus allows more lenient consideration when debt is acquired for the purpose of change of control of such banks.

In support of its position, the Board notes that Vickers was the single largest shareholder of Company, as well as its Chairman of the Board and Executive Vice President. Vickers was also the Chairman of the Board of Bank. Furthermore, two or three trustees controlling 40% of the shares of Company were found by the Board to be allied with Vickers. These facts caused the Board to conclude that Vickers controlled Company and Bank before becoming Company's sole shareholder.

The general standard of review, as previously set forth, gives the Court very limited discretion in reviewing Board actions and decisions. Having reviewed this conclusion in light of this standard, the Court finds the Board's conclusions concerning ownership of Bank were supported by substantial evidence. Accordingly, the Board must be affirmed in this respect.

■■■ Finally, the petitioner argues that the Board's ultimate decision to deny its application was not based upon substantial evidence. In support of its argument, the petitioner contends that the information it provided to the Board reflects the ability of it and Company to be sufficiently financially flexible to meet their financial obligations, operate in conformity with the

Board Policy Statement, and maintain adequate capital at the Bank. Again, the standard of review requires only that the denial of the application be supported by substantial evidence. *First Lincolnwood Corp.*, 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484. The Court concludes that the decision by the Board was supported by substantial evidence.

Although the petitioner has raised other arguments, the Court believes they are meritless, and that the above issues are dispositive of this case. Accordingly, the judgment of the Board is hereby AFFIRMED.